UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

04 12198 REK

*******************************************************
UTICA MUTUAL INSURANCE GROUP,   *
                      Plaintiff   *

vs.   *   CIVIL ACTION
   *   NO.
VINCENZO PREZIOSO and JOSEPHINE PREZIOSO,   *
d/b/a JOSIE'S PIZZA,   *
                      Defendants   *
*******************************************************

**COMPLAINT FOR DECLARATORY RELIEF**

### Introduction

This lawsuit arises from the alleged contamination of property located at 932 Salem Street in Malden, Massachusetts ("the Site"). The plaintiff seeks declaratory relief concerning the rights and responsibilities of the plaintiff and the defendants in connection with the defendant's policy of insurance relative to the Site.

### Parties

1. Plaintiff, Utica Mutual Insurance Group ("Utica"), is a duly organized insurer with a principal place of business in New Hartford, New York. Utica is duly licensed to do business in the Commonwealth of Massachusetts, and incorporated under the laws of the State of New York.

2. Defendants Vincenzo and Josephine Prezioso d/b/a Josie's Pizza, are the owners of 932 Salem Street, Malden, Massachusetts at all relevant time periods.

### Jurisdiction

3. Jurisdiction is proper under 28 U.S.C. § 1332(a).

## Statement of Facts

### 932 Salem Street, Malden, Massachusetts

4.      The defendants own and operate a pizzeria and restaurant located at 932 Salem Street in Malden, Massachusetts.

5.      The defendants purchased this property in 1980. Since that time, they have operated the pizzeria and restaurant.

6.      Prior to the Prezioso's purchase, the property had been used as a service station for approximately twenty-five (25) years, ending in 1974.

7.      Upon information and belief, Exxon Corporation, which is now Exxon Mobil, was one of various owners of the gasoline station prior to 1980.

8.      Records reflect that Exxon Corporation removed two 4,000 gallon and one 2,000 gallon underground gasoline storage tanks along with an aboveground waste oil tank, from the southwestern portion of the site property on April 19, 1974.

### Claims of Contamination by the MADEP

9.      On or about June 30, 1995, the Massachusetts Department of Environmental Protection ("MADEP") directed the defendants to obtain a Licensed Site Professional ("LSP") Evaluation Opinion to determine if further response actions were needed at the property in response to a possible release of oil and/or hazardous materials described in a 1987 environmental site assessment report and reported to the MADEP in 1988.

10.     The 1987 environmental site assessment report ("Zecco report") referred to by the MADEP was prepared by Zecco, Inc. of Northboro, Massachusetts and dated November 16, 1987. The Zecco report stated that a release occurred. Benzene, toluene, ethyl benzene and xylenes, as well as acetone were detected at elevated concentrations in ground water samples. The Zecco report also indicated that two 4,000 gallon and one 2,000 gallon underground gasoline storage tanks along with an aboveground waste oil tank, were removed from the southwestern portion of the site property by the Exxon Corporation on April 19, 1974. One 500-gallon underground fuel tank still remains there.

11.     In response to the MADEP's directive, Mrs. Prezioso and her son, Salvatore, retained Gulf of Maine Research Center, Inc. ("GMRC") on or about January 8, 1999, to conduct response actions at the site. A report by GMRC on March 17, 1999,

2

confirmed the 1987 Zecco report that a release of gasoline to groundwater occurred at the property.

12. According to GMRC's report, some remediation at the property would be required to achieve a condition of "no significant risk."

13. In August 2001, the MADEP formally issued a Notice of Responsibility ("NOR") to the defendants with regard to the alleged contamination at the Site.

14. The MADEP alleges in its NOR that the defendants are liable as a responsible party for the release or threat of release of hazardous materials at the Site under M.G.L. c. 21E.

**The Insurance Policy**

15. The defendants are insured under policy number FMP 20166 issued by the plaintiff, Utica Mutual Insurance Group, for the policy period January 30, 1983 through February 12, 1986. Upon information and belief, this is a renewal policy and the defendants allege that Utica insured the defendants from January 30, 1980 through January 30, 1983 as well.

16. The defendants tendered the MADEP's claims against it to the plaintiff, as well as Sentry Insurance, on or about September 9, 1999, requesting that the plaintiff and Sentry defend and indemnify it with respect to the MADEP's claims pursuant to the terms of their insurance policy.

17. The plaintiff agreed to defend the defendants under a reservation of rights.

18. The policy provides in pertinent part:

**COVERAGE B-PROPERTY DAMAGE LIABILITY**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

    A.    bodily injury or

    B.    property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the

allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend and suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

19. An "occurrence" under the policy is defined as:

> "occurrence" means an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

20. Under the terms of the policy, the "property damage" must be caused by an "occurrence" during the policy period.

21. The release of hazardous materials at the Site is not an "occurrence" as defined by the policy and there was no "occurrence" causing property damage during the policy periods.

**Policy Exclusions**

22. The defendants' policy of insurance contains a so-called "owned property exclusion," which provides that the policy does not provide coverage for:

> **PROPERTY DAMAGE** to property owned or held for sale or being transported by the insured or in the insured's care, custody or control.

23. Furthermore, the defendants' policy of insurance contains an exclusion for liability arising out of pollution unless the pollution was "sudden and accidental." In particular, the language of this exclusion provides as follows:

This insurance does not apply:

> (f) to bodily injury or property damages arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

24. Thus, under the applicable policy terms, there is no coverage for the claims brought by the MADEP against the defendants.

25. A dispute has therefore arisen between the parties as to whether coverage is applicable under the policies issued by Utica for the claims set forth herein.

**WHEREFORE**, the Plaintiff, Utica Mutual Insurance Group, demands judgment as follows:

1. That the Court declare the rights of the parties and adjudge:

   a. That an "occurrence" as defined by the policy, did not occur during the relevant policy periods.

   b. That no insurance coverage for defense and/or indemnity is available pursuant to the terms and conditions of the policy, as there was no "sudden and accidental" release of pollutants at the Site.

   c. That no insurance coverage for defense and/or indemnity is available pursuant to the terms and conditions of the policy, as there was no "sudden and accidental" release of pollutants at the Site that can reasonably be inferred to have occurred during the respective effective dates of this policy;

   d. That no insurance coverage for defense and/or indemnity is available pursuant to the terms and conditions of the policy, for such coverage does not extend to damages to the defendants' owned property or property under its care, custody and control, in connection with the Site;

2. That the Court declare the rights of the parties and adjudge that Utica has properly denied coverage for any pollution damages occurring at the properties;

5. That the Court award Utica its reasonable costs and attorneys' fees incurred as a result of this action; and

6.    For all other relief as the Court may find just, reasonable, and equitable.

        Respectfully submitted,

        UTICA NATIONAL INSURANCE GROUP,
        Defendant

        By Its Attorney:

        _____
        Richard E. Heifetz    BBO #229000
        Danielle M. Maloney    BBO #647527
        TUCKER, HEIFETZ & SALTZMAN, LLP
        Three School Street
        Boston, MA 02108
        617-557-9696
        Dated:    October 14, 2004